MICHAEL ARATA, ESQ.
Nevada Bar No. 11902
E-mail: marata@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109
Tel: (702) 577-3029
Fax: (702) 577-3029
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| BRIAN HERTZ, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>ORACLE AMERICA, INC., a Foreign Corporation;<br><br>Defendants. | CASE NO.:<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff BRIAN HERTZ (hereinafter "Mr. Hertz" or "Plaintiff") by and through his attorneys of record, the law firm of HKM Employment Attorneys LLP, hereby complains and alleges as follows:

## JURISDICTION

1. This is an action for damages for unlawful workplace discrimination based on age under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 623; and for certain claims brought pursuant to the Nevada Revised Statutes as outlined below.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f) (3) (unlawful discrimination and retaliation in employment).  Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3. Upon information and belief and unless otherwise indicated, all material allegations relative to the named defendants contained in this Complaint occurred in the State

of Nevada, Clark County. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

4. At all relevant times, Defendants were engaged in interstate commerce and employed 15 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year and are therefore subject to the provisions of the statutes outlined herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDY

5. On or about August 21, 2024, Plaintiff filed a Charge of Discrimination against the Defendant named in this action with the Equal Employment Opportunity Commission ("EEOC").

6. On or about December 9, 2024, Plaintiff received the "Notice of Right to Sue" from the EEOC.

7. Fewer than 90 days have passed since the date of mailing of the "Notice of Right to Sue." This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

8. Prior to filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

## PARTIES

9. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

10. Plaintiff, at all relevant times, was a resident of Las Vegas, Nevada.

11. At all relevant times, Defendant ORACLE AMERICA, INC. (hereinafter "Oracle" or "Company" or "Defendant") was a foreign corporation that maintains its headquarters in Austin, Texas.

12. Personal jurisdiction exists over Defendant as it purposefully availed itself of the privileges of conducting activities in Nevada and established minimum contacts sufficient to confer jurisdiction. Defendant does business in Nevada, employs residents of Nevada, advertises in Nevada, markets to Nevada customers, and actions taken by Defendant as described in this Complaint were made in Nevada.

**GENERAL ALLEGATIONS**

13. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

14. Plaintiff was above the age of forty (40) during all relevant times.

15. On or about March 20, 2023, Mr. Hertz, at age 57, commenced his second tenure of employment with Oracle.

16. Mr. Hertz previously worked for Oracle between 2012 to 2021.

17. Mr. Hertz was hired as an Application Sales Manager and initially assigned to work in Financial Services/Enterprise Accounts Team under Regional Vice President Jesse Palmer.

18. Within a few months of his return, around June 1, 2023, Mr. Hertz was reassigned to the Financial Services Major Accounts team (hereinafter "Majors Team") under the management of Regional Vice President Daniel Colon (hereinafter "Mr. Colon"), who was notably younger than Mr. Hertz at or around 43 years of age.

19. Mr. Hertz was one of eight individuals working on the Majors Team under Mr. Colon's direction.

20. Mr. Hertz was the third oldest team member on the Financial Services Major Accounts team. At least half of the team members were significantly younger than Mr. Hertz.

21. Almost immediately after the transfer, Mr. Colon began harassing and treating Mr. Hertz differently from his younger peers on the team.

22. Mr. Colon's discriminatory treatment toward Mr. Hertz included, but was not limited to, the following:

    a. Mr. Colon referenced Mr. Hertz's age and made comments about Mr. Hertz being an "old man."

    b. Mr. Colon scrutinized Mr. Hertz's utilization of company benefits such as reimbursement for travel, cell phone and office expenses, which he did not do with younger team members.

    c. Mr. Colon micromanaged Mr. Hertz's work.

1         d. Mr. Colon intruded on Mr. Hertz's client relationships, confusing the clients, undermining Mr. Hertz, and jeopardizing the relationships.

        e. Mr. Colon would frequently insert himself into client meetings without discussing with Mr. Hertz beforehand or contact Mr. Hertz's clients without his involvement.

23. When Mr. Hertz confronted Mr. Colon about how his behavior unnecessarily jeopardized Mr. Hertz's existing client relationships, Mr. Colon dismissed the complaints and declared the accounts to be his personal accounts.

24. Mr. Colon retaliated against Mr. Hertz after he attempted to directly address the unfair treatment with Mr. Colon.

25. Mr. Colon took steps to threaten and discredit Mr. Hertz, including sending an email in early October 2023 claiming that Mr. Hertz was behind pace to meet his annual sales quota for FY2024 despite knowing that: (1) Mr. Herz had not been afforded the same sales opportunities as his younger peers based on his client region assignments, (2) Oracle did not evaluate or rank an employee's sales performance during their first year in a new territory assignment, such as Mr. Hertz, and (3) Mr. Hertz was recognized by Oracle executive management as having created more pipeline growth than anyone else assigned to the Financial Services teams.

26. Mr. Colon singled out and targeted Mr. Hertz for this criticism, as he did not send a comparable email or otherwise criticize Mr. Hertz's younger team members despite them having a similar or worse sales performance record.

27. Mr. Colon treated Mr. Hertz differently from his younger colleagues by threatening Mr. Hertz about his sales performance.

28. Mr. Colon departed from Company practice by threatening Mr. Hertz about his sales performance despite it being his first year in a new territory assignment.

29. Mr. Colon frequently ignored and failed to attend scheduled meetings with Mr. Hertz, including scheduled client meetings.

30. In late October, Mr. Hertz contacted Mr. Colon's supervisor, Adam Scott

(hereinafter "Mr. Scott"), Group Vice President of Banking, Insurance and Financial Markets NA, who is around 44 years old, to report Mr. Colon's harassment and treatment of Mr. Hertz.

31. However, Mr. Scott dismissed the claims and did not take any action to address the complaint.

32. Mr. Colon retaliated against Mr. Hertz for engaging in protected activity by complaining to Mr. Scott and threatened there would be consequences if Mr. Hertz pursued his complaint further.

33. Mr. Colon instructed Mr. Hertz not to contact any manager or executive above Mr. Colon without his permission.

34. In November 2023, despite these threats, Mr. Hertz complained to Mr. Scott that Mr. Colon's actions were creating a hostile work environment. Mr. Scott again disregarded the complaint.

35. Mr. Hertz considered requesting assistance from Oracle Human Resources at this time, but was fearful of further retaliation by Mr. Colon, who had a reputation for retaliating against employees who complained to Human Resources about him.

36. Despite Mr. Colon's ongoing harassment and discrimination, Mr. Hertz's sales performance remained on par with his younger colleagues, placing him approximately in the middle of the Majors Team based on revenue generation.

37. Notably, Mr. Hertz's attempts to build relationships with new clients were starting to bear fruit as he was making significant inroads with Fidelity Investments, Equitable and Guardian Life Insurance.

38. Mr. Colon's bias against Mr. Hertz threatened to derail these efforts as Mr. Colon took the opportunity to ridicule and question Mr. Hertz's ability to secure a deal with Fidelity Investments following a presentation by Mr. Hertz to senior management in December 2023, undermining Mr. Hertz's credibility within the Company.

39. Following the presentation, Mr. Hertz spoke with Mr. Scott and complained that Mr. Colon was treating him differently because of his age and cited Mr. Colon's behavior during the December 2023 presentation as an example.

40. Plaintiff's report to Mr. Scott about the on-going discrimination and harassment was ignored and went unaddressed by the Company.

41. In early March 2024, Mr. Hertz secured a verbal commitment from Fidelity Investments to proceed with a transformation from their on-premises Oracle applications to Oracle's Cloud Financials solution.

42. It was estimated that the resulting deal would generate approximately $6 million in annual software-as-a-service revenue plus an additional $28 million services engagement, which would far exceed Mr. Hertz's sales quotas.

43. Yet, just days after this achievement, on March 8, 2024, Mr. Colon informed Mr. Hertz that his employment would be terminated effective March 11, 2024, for "poor performance."

44. Mr. Hertz was stunned by this development as, at the time he was fired, in addition to securing the Fidelity Investments verbal commitment, Mr. Hertz had procured $9 million in revenue against his $4 million annual quota with three months remaining in the fiscal year.

45. Mr. Hertz furthermore had approximately $2 million in sales that were forecasted to be completed during Q4.

46. When asked, Mr. Colon refused to provide details or any explanation for how Mr. Hertz underperformed.

47. Mr. Colon, and Oracle, further failed to provide any reasoning, explanation, or justification for firing Mr. Hertz when: 1) Mr. Hertz was the only team member let go (when asked, Mr. Scott specifically told Mr. Hertz that the firing was due to a combination and factors but was not part of any reduction in force or layoffs); 2) other, younger team members with lower sales performance than Mr. Hertz were not disciplined, let alone fired; 3) Mr. Colon and Oracle did not follow Company policy in terminating Mr. Hertz's employment; and 4) Mr. Hertz had not received any written or formal discipline prior to the termination of his employment.

48. Rather, Oracle terminated Mr. Hertz's employment within days of him

procuring a verbal commitment for a large amount of new business for the Company, after he was discriminated against and targeted by his supervisor, Mr. Colon, for nearly nine months because of his age, and after Mr. Hertz reported the discrimination and harassment to Mr. Colon's supervisor, Mr. Scott.

49. When Mr. Hertz reached out to Human Resources to appeal the termination decision in this context, and after Mr. Hertz specifically expressed his belief that he was unfairly fired because of his age and for reporting the discrimination and harassment he experienced, Oracle Human Resources failed to provide any additional explanation or justification for the decision.

50. Ultimately, Oracle terminated Mr. Hertz's employment on March 11, 2023, despite his demonstrated success and desire to continue working for the Company.

51. The termination was the culmination of months of harassment and discrimination by Mr. Colon and there is no adequate justification or explanation for terminating Mr. Hertz's employment under the facts discussed above.

52. Upon information and belief, Oracle treated Mr. Hertz differently from his younger colleagues by failing to follow its standard disciplinary process for performance-related issues, which it had done with younger employees who were charged with performance-related issues.

53. Oracle did not follow its progressive discipline procedures in firing Mr. Hertz.

54. Upon information and belief, Plaintiff was replaced by a younger employee.

55. Mr. Hertz engaged in protected activity by reporting the on-going age discrimination he was experiencing to:

    a. His direct supervisor, Mr. Colon;

    b. Mr. Colon's supervisor, Mr. Scott; and

    c. Company Human Resources.

56. Mr. Hertz complied with Company policy for reporting discrimination by complaining to his supervisors, Mr. Colon and Mr. Scott, and Company Human Resources.

57. Defendant's explanation that Plaintiff was fired for "poor performance" is

merely pretext and is unsubstantiated.

58. At the time of termination of Plaintiff's employment, Defendant did not provide any explanation or support for their purported decision to terminate Plaintiff's employment for "poor performance."

59. Defendant fired Plaintiff after, and because, he made multiple reports about on-going harassment, discrimination, and retaliation, that he was experiencing.

60. Defendant discriminated against Plaintiff because of his age (58 years old at the time of the termination of his employment).

61. Upon information and belief, Defendant acted toward Plaintiff with an intent to discriminate against him based on his age (58 years old at the time of the termination of his employment).

62. Soon after he began working under Mr. Colon's direction, Plaintiff was subjected to constant harassment by Mr. Colon.

63. The harassment did not stop despite Plaintiff's multiple reports to his supervisors, including Mr. Colon, Mr. Scott, and others.

64. The harassment extended to Defendants subjecting Plaintiff to differing terms and conditions of employment.

65. Plaintiff engaged in protected activity by reporting the harassment and retaliation experienced by him to his supervisors.

66. Plaintiff's reports and complaints about the on-going discrimination and harassment were largely dismissed and Defendant failed to take any meaningful action in response.

67. Defendant retaliated against Plaintiff for engaging in protected activity by terminating his employment.

## FIRST CAUSE OF ACTION

**(Discrimination Based on Age in violation of State and Federal Statutes)**

68. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

69. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on age.

70. At all relevant times, Plaintiff was above forty (40) years old.

71. Defendant as an employer is subject to Nevada and federal statutes prohibiting discrimination, NRS 613.330 et. seq., Age Discrimination in Employment Act, 29 U.S.C. § 621 to 29 U.S.C. § 634, and thus, has a legal obligation to provide Plaintiff and its all of its employees with equal employment opportunities without discrimination based on their age.

72. From the time he began working under Mr. Colon's supervision, through the termination of his employment, Plaintiff was subjected to constant discrimination and harassment, including, but not limited to the following conduct by Mr. Colon:

   a. Making discriminatory comments directed towards Plaintiff or in his presence;
   b. Subjecting Plaintiff to differing terms and conditions of employment from his younger counterparts, including limiting his duties, micromanaging his work, questioning his use of Company benefits, intruding into Plaintiff's relationships with clients, undermining Plaintiff's credibility with clients, targeting Plaintiff for criticism related to sales performance; and
   c. Terminating his employment.

73. Plaintiff reported the harassment and discrimination he experienced to his supervisors in compliance with Oracle policy.

74. Plaintiff's reports and complaints about the on-going discrimination and harassment were largely ignored and went unaddressed.

75. Defendant discriminated against Plaintiff when it failed to adequately investigate and protect him from the harassment and discrimination he endured.

76. Instead, Plaintiff was subjected to an ongoing environment of harassment.

77. The events constituting harassment were severe and/or pervasive.

78. Due to the severity and pervasiveness the harassment, Plaintiff was subjected to a hostile work environment.

79. Defendant's conduct constituted a change in the terms and conditions of

Plaintiff's employment for which he suffered harm, including but not limited to, the loss of his employment.

80. Defendant discriminated against Plaintiff by terminating his employment and replacing him with a younger employee.

81. The purported reason for Plaintiff's termination is pretextual as Plaintiff's sale performance was at least on par with other members of the Majors Team, but he was the only employee disciplined, let alone fired.

82. Defendant willfully terminated Plaintiff's employment because of his age.

83. Plaintiff suffered adverse economic impact due to Defendant's discriminatory behavior and the termination of his employment, including wage loss.

84. Plaintiff was embarrassed, humiliated, angered, and discouraged by the discriminatory actions taken against him.

85. Plaintiff suffered compensable emotional harm including, but not limited to, mental anguish, loss of enjoyment of life, emotional distress, and anxiety resulting from this unlawful discrimination by his employer.

86. Plaintiff is entitled to be fully compensated for his emotional disturbance by being forced to endure this discrimination pursuant to NRS 613.432.

87. Defendants engaged in such actions with malice or reckless indifference to Plaintiff's protected rights, and Defendants must pay Plaintiff an additional amount in punitive damages.

88. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendants in an amount deemed sufficient by the jury.

89. Pursuant to the ADEA, Plaintiff is entitled to recover liquidated damages for Defendant's intentional and willful violations of the law.

90. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred as a result of these violations of the ADEA and Nevada state law and therefore, he is entitled to recover reasonable attorney's fees against

Defendant.

## SECOND CAUSE OF ACTION

### (Retaliation in violation of State and Federal Statutes)

91. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

92. In violation of 29 U.S.C. § 623 and NRS 613.340, Defendant retaliated against Plaintiff after he complained of acts which he reasonably believed were discriminatory.

93. Plaintiff opposed and reported the discriminatory conduct towards him by Mr. Colon on multiple occasions after he began experiencing discrimination soon after he began working under Mr. Colon's supervision, through the duration of his employment until he was fired by Defendant in March 2024.

94. Plaintiff opposed and reported the discriminatory conduct to Mr. Colon, Mr. Scott, among others employed by Defendants.

95. By way of non-exhaustive examples, Defendant retaliated against Plaintiff by:
   a. Subjecting Plaintiff to differing terms and conditions of employment from his younger counterparts, including limiting his duties, micromanaging his work, questioning his use of Company benefits, intruding into Plaintiff's relationships with clients, undermining Plaintiff's credibility with clients, targeting Plaintiff for criticism related to sales performance;
   b. Harassing Plaintiff; and
   c. Terminating his employment in March 2024.

96. Defendant fired Plaintiff because he made multiple reports about on-going harassment, discrimination, and retaliation, that he was experiencing.

97. Plaintiff may be unaware of additional detrimental acts constituting retaliation.

98. The actions taken by Defendant were taken because of Plaintiff's protected complaints of discrimination to his supervisors, including Mr. Colon and Mr. Scott, and were designed to dissuade a reasonable worker from complaining about discrimination or otherwise engaging in protected activity, and such conduct by Defendant constitutes illegal retaliation,

prohibited by federal and state statutes.

99. Plaintiff suffered adverse economic impact due to the termination of his employment, including wage loss.

100. Plaintiff was embarrassed, humiliated, angered, and discouraged by the discriminatory and retaliatory actions taken against him.

101. Plaintiff suffered compensable emotional harm including, but not limited to, mental anguish, loss of enjoyment of life, emotional distress, and anxiety resulting from this unlawful retaliation by his employer.

102. Plaintiff is entitled to be fully compensated for his emotional disturbance by being forced to endure this retaliation pursuant to NRS 613.432.

103. Defendants engaged in such actions with malice or reckless indifference to Plaintiff's protected rights, and Defendants must pay Plaintiff an additional amount in punitive damages.

104. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct and by way of punishing the Defendants in an amount deemed sufficient by the jury.

105. Pursuant to the ADEA, Plaintiff is entitled to recover liquidated damages for Defendant's intentional and willful violations of the law.

106. Plaintiff has had to obtain the services of an attorney to protect his rights and secure compensation for the damages incurred as a result of these violations of the ADEA and Nevada state law and therefore, he is entitled to recover reasonable attorney's fees against Defendant.

/ / /

/ / /

/ / /

Not applicable

**WHEREFORE,** Plaintiff prays this court for:

a. jury trial on all appropriate claims and to enter judgment in favor of the Plaintiff by:

  i. Awarding Plaintiff an amount sufficient to fully compensate him (including tax consequences) for all economic losses of any kind, and otherwise make him whole in accordance with the law;

  ii. An award of compensatory and punitive damages to be determined at trial;

  iii. General damages;

  iv. Special damages;

  v. Liquidated damages;

  vi. Pre- and post-judgment interest;

  vii. An award of attorney's fees and costs; and

  viii. Any other relief the court deems just and proper.

Dated: February 25, 2025.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

By:  /s/ *Michael Arata*
MICHAEL ARATA, ESQ.
Nevada Bar No. 11902
E-mail: marata@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
101 Convention Center Drive, Suite 600
Las Vegas, Nevada 89109
Tel: (702) 577-3029
Fax: (702) 577-3029
*Attorneys for Plaintiff*